## Gallo v. Third Federal Savings and Loan Association

Before Doty, A. J., Eiseman and Barbieri, JJ.

*Paul J. Downey*, for plaintiff.

*Martin A. Heckscher*, for defendant.

BARBIERI, J., April 30, 1973.—In this case, the suit is by Pasquale Gallo on a claim for the sum of $3,048.-35, allegedly improperly withdrawn from a savings account carried by defendant, Third Federal Savings

and Loan Association. At the time of the withdrawals, the account stood solely in the name of plaintiff's father, Alberto Gallo, a/k/a Roberto Gallo (Alberto). Plaintiff asserts the right to sue and recover in this action, without participation by his father, on the fact that the bank issued a passbook after the withdrawals had taken place naming him and his father as joint account depositors and owners. As will appear, this new joint passbook was not only issued after the fact of the withdrawals which are the subject of this suit, but was not properly authorized in writing by plaintiff's father.

The trial, which was held before Berger, J., and a jury, on March 22 and 23, 1972, resulted in a verdict for plaintiff in the claimed sum of $3,048.35, whereupon defendant filed motions for judgment notwithstanding the verdict and for a new trial. Thereafter, Judge Berger resigned from the court, so that the motions were argued before this court en banc, consisting of Doty, A. J., Eiseman and Barbieri, JJ.

At the trial, it was stipulated that plaintiff's father, Alberto, who, as we noted, was not joined as a party, opened the account with defendant on April 27, 1956; that the balance in the account on September 21, 1962, was $3,500.37; and that the name of plaintiff, Pasquale Gallo, was added to this deposit account on or after March 27, 1967, at a time when the balance in the account was $452.02, which was the balance shown in a passbook as of March 1, 1967. It is admitted that, prior to the institution of suit, plaintiff made claim for the balance standing in his father's name in the account as of September 21, 1962, in the sum of $3,500.37.[1] Through a combination of circumstances, including the unaccountable loss of the original passbook, a new

[1] The jury verdict for $3,048.35 reflects a credit for the admitted balance of $452.02 against the claimed total of $3,500.37.

passbook was issued in the name of "Alberto, a/k/a Roberto Gallo or Pasquale Gallo, h/s." This current passbook is not dated and, as will appear, its issue was unauthorized by the original depositor, Alberto. Not only was Alberto not joined as a party, but the record is devoid of any deposition by him, or any other indication in writing that he was aware of, or assented to, the transactions which took place between the bank and Pasquale in 1967. In fact, Pasquale testified that his father was completely unaware of the circumstances. He testified: "I was even afraid to send the fact to my father, to write to my father, tell what happened." Pasquale testified that his father was in Italy, where he had lived since 1962. Thus, the withdrawals for which this suit is brought took place after Alberto's departure. Pasquale testified that he had not seen his father since he left for Italy in 1962, but had corresponded with him and "He told me I could use the money."

The complaint in this case is based upon an alleged "power of attorney" signed by Alberto in favor of Pasquale. Paragraph 6 of the complaint reads:

"6. On or about March 1, 1967, the plaintiff herein filed a power of attorney with the defendant signed by Alberto Gallo giving the plaintiff complete dominion over account number 20921."

In fact, the record is devoid of any proof of a power of attorney or other instrument which would verify, authorize or ratify the action of the bank in issuing a passbook to include the name of Pasquale Gallo. The uncontradicted proofs are that the new passbook was issued solely on the basis of a withdrawal slip, entirely in blank, containing the purported signature: "Roberto Gallo," and based upon the understanding with Pasquale that he would procure the necessary signature of his father to the joint account signature card

handed over to Pasquale when the passbook was delivered to him. This appears in the testimony of an officer of defendant association as follows:

"BY MR. DOWNEY:

"Q. By what authorization did you add the name of Pasquale Gallo to that book?

"A. This was done on no authorization. We did it on the assumption that the joint signature card was going to be returned to us, which it was not. The card came back with only one signature.

"Q. Do you mean you issued the book before you got the card back?

"A. Yes."

The above testimony, adduced on cross-examination by plaintiff, stands unrebutted by Pasquale and otherwise uncontradicted on the record in this case. It establishes that the validity of the new passbook was contingent upon there being added to the contract for the joint account the necessary signature of Alberto. This condition was never met. Instead, plaintiff returned the joint account card with his signature alone. In place of Alberto's signature on the card there is noted: "See signature attached," apparently a reference to the blank withdrawal slip which contained the signature "Gallo, Roberto." Thus, we are faced here with a suit for withdrawals made upon signatures of the absent Alberto, who is not made a party to this suit. Furthermore, so far as the record goes, Alberto has not been heard of in any way in connection with this suit, nor has any authorization been obtained from him which would authenticate or ratify the conversion of his account into joint names with his son. Obviously, no transfer of Alberto's funds into a joint account was properly authorized, unless it can be said that a savings deposit account can be transferred to a joint account on the basis of a signed but blank withdrawal

slip, and without the signature of the original depositor on the joint account agreement.[2]

Even if the deposit book had been properly issued, however, there would still remain one of the main legal questions before this court: whether or not such a transfer would authorize plaintiff to bring action for allegedly improper withdrawals which took place prior to the time when his name was added to the account, totally without the joinder or other authorizing action on the part of the depositor whose account it was when the withdrawals were made. In view of the conclusions which we have reached, it is unnecessary for us to consider this latter question or any of the other very interesting questions which have been briefed and argued.

There can be no question that the loose and careless activities of defendant in this case, contrary to normal banking procedures, fully explain and account for the bizarre circumstances with which we are confronted. Nevertheless, carelessness cannot supply the necessary authentication by Alberto, the actual depositor, of the transfer which took place. If he meant to transfer his account to his son alone or jointly with him, he did not say so, either in writing or otherwise, insofar as the record in this case reveals. This is quite aside from the fact that Alberto, so far as the record portrays, is completely silent as to whether or not he was the party who withdrew the sums which are here being claimed, for it goes without saying that the total of the amounts withdrawn, the subject of the jury's verdict, was either withdrawn by Alberto, who is not joined or heard from, or was paid out of his account on forgeries of his signature.

---

[2] Even if defendant could pay out to the full extent of the deposit account, the cash or the draft therefor could only be payable to the father.

If Alberto has a claim which either he or his son may properly pursue, an opportunity to present it will be afforded. We note in passing that Judge Berger did not charge on the issue which we have here concluded is crucial. Accordingly, in fairness to plaintiff, and more particularly to his father, a new trial will be ordered.

## ORDER

And now, April 30, 1973, defendant's motion for a new trial is granted and a new trial is hereby ordered.